UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MAYNOR ROMEO CAMEY BATZIN,

                            Plaintiff,                        **REPORT AND**
                                                          **RECOMMENDATION**
         -against-                              CV 18-2260 (JFB)(AYS)

DUNE WOODWORKING INC. and
CARL SCHAFFER JR.,

                           Defendants.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Joseph F. Bianco for Report and

Recommendation, is Plaintiff Maynor Romeo Camey Batzin's ("Plaintiff" or "Batzin") motion

for default judgment, pursuant to Federal Rule of Civil Procedure 55.  (Docket Entry ("DE")

[12].)  By way of a Complaint filed on April 17, 2018, Plaintiff commenced this action against

Defendants Dune Woodworking Inc. and Carl Schaffer Jr. (collectively "Defendants"), pursuant

to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor

Law ("NYLL"), alleging that Defendants failed to pay him overtime compensation for all hours

worked in excess of forty hours per week, failed to provide him with a wage notice at the time of

hiring, and failed to provide him with accurate and complete wage statements with his weekly

paychecks.  (Compl., DE [1].)  Plaintiff also alleges that Defendants breached an agreement to

repay a loan provided to Defendants by Plaintiff.  (Id.)

       After Defendants failed to answer or otherwise respond to Plaintiff's Complaint, the

Clerk of the Court entered a notation of default against them on August 7, 2018.  (DE [10].)  On

September 25, 2018, Plaintiff filed the within motion for default judgment, (DE [12]), which

Judge Bianco granted on November 16, 2018 solely with respect to liability.  (DE [16].)  By that

same Order, Judge Bianco referred the issue of damages to this Court for a recommendation as to the appropriate amount of damages, costs and fees, if any, to be awarded.  (DE [16].)  For the following reasons, this Court respectfully recommends that Plaintiff be awarded damages as set forth herein.

BACKGROUND

Plaintiff, a former employee of Defendant Dune Woodworking Inc. ("Dune"), was employed as a carpenter for the entity from approximately January 2015 to on or about April 11, 2018.  (Compl. ¶ 5.)  Dune operates a cabinet building business located in Westhampton, New York.  (Id. ¶ 8.)  Defendant Carl Schaffer ("Schaffer") is the owner and operator of Dune.  (Id. ¶ 9.)  Schaffer was responsible for hiring and firing Plaintiff, daily supervision of Plaintiff's duties, and determining the number of hours Plaintiff worked during his employment.  (Id. ¶¶ 28-34.)  Schaffer was also responsible for running the day-to-day operations of Dune.  (Id. ¶ 32.)

Throughout Plaintiff's employment with Dune, his primary duties included building kitchen, bathroom, and commercial cabinets.  (Id. ¶ 11.)  From approximately January 2015 until on or about December 31, 2017, Plaintiff worked Monday through Friday from 7:00 a.m. to 5:30 p.m. and Saturdays from 7:00 a.m. to 3:30 p.m., with a thirty-minute break each day, which amounted to fifty-eight hours per week.  (Id. ¶¶ 12-13.)  From on or about January 1, 2018 until on or about April 11, 2018, Plaintiff worked Monday through Friday from 7:00 a.m. until 4:30 p.m., with a thirty-minute break each day, which amounted to forty-five hours per week.  (Id. ¶¶ 14-15.)

During Plaintiff's employment, he was paid by Defendants in a variety of ways.  From approximately January to May 2015, Plaintiff was paid in cash on a weekly basis.  (Id. ¶ 16.)  From approximately February to July 2016, Defendants paid Plaintiff partly in cash and partly by

check on a weekly basis.  (Id. ¶ 17.)  During the remaining periods of Plaintiff's employment, Plaintiff was paid by personal check on a weekly basis.  (Id. ¶ 18.)

Throughout his employment, Plaintiff was paid an hourly rate of pay by Defendants.  (Id. 19.)  From approximately January 2015 until on or about July 23, 2016, Defendants paid Plaintiff $28.00 per hour.  (Batzin Decl. ¶ 12, annexed to Pl. Mot. for Default J. at Ex. G, DE [12-10].)  From on or about July 24, 2016 until his termination, Defendants paid Plaintiff $34.00 per hour.  (Batzin Decl. ¶ 13.)

From approximately January 2015 to on or about March 10, 2018, Plaintiff was only paid straight time for all hours worked in a given week.  (Id. ¶ 20.)  No overtime compensation was provided by Defendants during this period.  (Id. ¶¶ 21-22.)  On or about March 11, 2018, Defendants began paying Plaintiff overtime compensation for those hours Plaintiff worked in excess of forty per week.  (Id. ¶ 23.)

Plaintiff punched in at the beginning of each shift and punched out at the end of each shift.  (Id. ¶ 24.)  Plaintiff did not punch in or out for his lunch breaks; rather, Defendants subtracted thirty minutes from each of Plaintiff's shifts each week.  (Id.)

Defendants did not provide Plaintiff with a notice and acknowledgement of pay rate and pay day, or any other type of wage notice, at the time of his hiring, or at any point thereafter.  (Id. ¶ 25.)  Excluding approximately February through July 2016, Defendants did not provide Plaintiff with earning statements or paystubs with his weekly paycheck.  (Id. ¶ 26.)  Between approximately February through July 2016, Defendants provided Plaintiff with weekly earning statements; however, such statements did not reflect the actual number of hours Plaintiff worked each week.  (Id. ¶ 27.)  Such statements only accounted for Plaintiff's first forty hours of work each week and did not include any overtime hours worked or his overtime rate of pay.  (Id.)

In or about October 2017, Plaintiff agreed to loan Defendants fifteen thousand dollars, which Defendants agreed to repay in full on December 18, 2017.  (Id. ¶¶ 39-40.)  On December 18, 2017, Defendants gave Plaintiff a check in the amount of fifteen thousand dollars, but told him not to cash it because the bank account did not contain sufficient funds.  (Id. ¶ 41.) Defendants told Plaintiff he would receive another check from a different bank account but such a check was never tendered.  (Id. ¶ 42.)

Plaintiff made a demand for payment of the loan on ten occasions between December 18, 2017 and April 11, 2018.  (Id. ¶ 43.)  On April 11, 2018, Plaintiff made yet another demand for repayment from Defendants.  (Id. ¶ 44.)  Defendants fired Plaintiff on April 11, 2018 and had him removed from their workshop by the police.  (Id. ¶ 45.)  Defendants did not repay Plaintiff the fifteen thousand dollars they borrowed.  (Id.)

Plaintiff commenced the within action on April 17, 2018, alleging violations of the FLSA and the NYLL.  Plaintiff seeks unpaid overtime wages pursuant to both statutes.  Plaintiff also asserts claims pursuant to Section 195(1) and 195(3) of the NYLL for Defendants' failure to provide him with written wage notices and written wage statements, as required by the statute. Finally, Plaintiff asserts a claim for breach of contract for the fifteen thousand dollars that Plaintiff loaned to Defendants and Defendants failed to repay.  Plaintiff seeks damages in the amount of $122,957.41.  (DE [12-12].)

DISCUSSION

I.   Legal Standard

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process before entering a judgment of default against a party that fails to respond or defend.  See Fed. R. Civ. P. 55; see also Romero v. Floris Constr., Inc., No. 1:16-CV-4282, 2017 WL 5592681, at *2

4

(E.D.N.Y. Nov. 20, 2017).  First, the party seeking a judgment of default must ascertain a certificate of default from the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  After the Clerk issues a certificate, the moving party then requests an entry of a judgment of default.  See id. at 55(b); see also Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565, 2018 WL 1513628, at *2 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018).  All of the well-pleaded factual allegations in the complaint pertaining to liability are deemed to be true.  See Qiu Hua Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *2 (E.D.N.Y. May 25, 2017) (citing Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (E.D.N.Y. 1992)).  However, it is up to the court to determine whether the unchallenged facts constitute a legitimate cause of action.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Here, Judge Bianco entered a default judgment against Defendants on November 16, 2018.  Accordingly, all of the allegations set forth in the Complaint are deemed true and liability in favor of Plaintiff has already been established.  The only issue before this Court is the amount of damages to be awarded to Plaintiff for each of his causes of action.

II.   Damages

     A.   Standard Applicable to a Damages Award Following Default Judgment

Unlike allegations pertaining to liability and proximate cause, allegations set forth in connection with damages are not deemed admitted on account of a defendant's default.  See, e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Olvera v. Los Taquitos Del Tio Inc., No. 15 Civ. 1262, 2015 WL 3650238 *1 (E.D.N.Y. June 11, 2015); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364, at *2 (E.D.N.Y. June 9, 2015).  Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement to damages to a "reasonable

certainty." Olvera, 2015 WL 3620364, at *1.  Reasonable certainty means that "damages may

not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not

remote or the result of other intervening causes." Credit Lyonnais Sec. (USA) Inc. v. Alcantara,

183 F.3d 151, 153 (2d Cir. 1999).  While the party seeking damages is entitled to all reasonable

inferences from the evidence it offers, a court must "ensure that there is a basis for the damages

sought by a plaintiff before entering judgment in the amount demanded." Avelar v. Quiros, Inc.,

No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015); Rodriguez v. Almighty

Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect,

Inc., 653 F.2d 61, 65 (2d Cir.1981)).

The court determining damages has the discretion to hold an evidentiary hearing. See

Fed. R. Civ. P. 55(b)(2); see also Castellanos v. Deli Casagrande Corp., No. CV 11-245, 2013

WL 1207058, at *3 (E.D.N.Y. Mar. 7, 2013), adopted by, 2013 WL 1209311 (E.D.N.Y. Mar. 25,

2013).  Such a hearing is not required, however, so long as documents submitted, such as

detailed affidavits, allow the court to conduct an inquiry sufficient to establish damages to a

reasonable certainty. See Avelar, 2015 WL 1247102, at *7.  Where there has been a default in a

case alleging wage violations, the plaintiff's recollection and estimation of the hours worked are

presumed correct and are often sufficient to support a damages award. See e.g., Rodriguez, 784

F. Supp. 2d at 126; Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1,

2008).

B.    Overtime Wages

Under the FLSA, an employee is entitled to recover "the amount of their unpaid

minimum wages, [and/] or their unpaid overtime compensation." 29 U.S.C. § 216(b).  Like the

FLSA, the NYLL provides that an employee is entitled to recover unpaid minimum wages and

overtime.  See 12 N.Y.C.R.R. §§ 142-2.2-2.4.  Unpaid overtime wages are calculated by multiplying the wage rate by 0.5 to determine the amount owed per hour for every hour over 40 hours worked.  See 29 U.S.C. § 207(a)(1).  That amount is then multiplied by the number of hours of overtime worked per week to yield a sum of weeks of overtime pay owed.  The totals for each week are then aggregated to calculate the total amount of overtime wages owed.  See Mendez v. Casa Blanca Flowers, Ltd., No. 12-CV-5786, 2014 WL 4258943 * 3 (E.D.N.Y. July 8, 2014), adopted by, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014).  "Even when wages exceed the minimum prescribed by Congress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]."  Avelar, 2015 WL 1247102, at *5 (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944)) (alterations in original).

  While both the federal and state statutory schemes place the burden of showing hours worked on the employee, see Avelar, 2015 WL 1247102, at *6, the employer is charged with maintaining accurate records of an employee's hours.  See Guaman, 2015 WL 362036, at *7.  When the employer's records are inadequate, an employee may meet his burden of showing hours worked by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

  C. Liquidated Damages

  Both Federal and New York State law provide for enhanced damages equivalent to 100% of the total amount of the wages found to be due.  As to such enhanced damages, federal law places the burden of establishing that liquidated damages should not be awarded on the employer.  See Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir.1997).

Under state law, willfulness is established where employers voluntarily underpay employees. See Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). These standards have been recognized to be essentially the same. See id. Where, as here, the employer defaults, an award of liquidated damages is appropriate. See Guaman, 2015 WL 3620364, at *10.

  D. Wage Theft Prevention Act Damages

    Under the NYLL, employers are required to furnish their employees with accurate, specifically enumerated wage statements. See N.Y. Lab. Law § 195(3). Plaintiff seeks to recover damages for Defendants' failure to provide accurate wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"). Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500. See Li v. Leung, No. 15 Civ. 5262, 2016 WL 5369489, at *16 (E.D.N.Y. June 10, 2016), adopted as modified by, 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016). On and after February 27, 2015, however, the WPTA entitles Plaintiff to $250 for each work day that the violation occurred, not to exceed $5,000. See N.Y. Lab. Law § 198(1-d). As Plaintiff asserts he was never given a proper wage statement, he is entitled to WTPA damages.

  E. Facts Necessary to Plead a Claim for Wages and Overtime Damages

    In view of the fact that it is Plaintiff's burden to prove entitlement to damages to a "reasonable certainty," this Court must consider the nature of the proof required to prove such damages where, as here, a plaintiff seeks overtime damages. The Second Circuit has spoken explicitly as to the level of pleading required to state a claim for overtime wages. See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); Nakahata v. New

York–Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); Dejesus v. HF

Mgmt. Servs., LLC, 726 F.3d 85, 88 (2d Cir. 2013).

Similar to the "reasonable certainty" standard required to prove entitlement to default

damages, the Second Circuit has held that a plaintiff seeking to state a claim for overtime wages

must plead facts sufficient to support a "reasonable inference" that he worked more than forty

hours in a given week.  See Dejesus, 726 F.3d at 90.  While such hours need not be pled with

exact "mathematical precision," a plaintiff seeking overtime wages is required to draw from his

"memory and experience" when pleading hours worked.  Id.  Facts thus drawn from memory

must provide "sufficient detail about the length and frequency" of hours worked so as to

"support a reasonable inference that [plaintiff] worked more than forty hours in a given week."

Id.  The pleading of such factual context allows a plaintiff to "nudge [his] claim 'from

conceivable to plausible."  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)); see also Lundy, 711 F.3d at 114 n.7 (stating that an approximation of overtime hours

worked, while "not needed in all cases," may "help draw a plaintiff's claim closer to

plausibility").

With these pleading standards in mind, the Court turns to consider the issues referred to

this Court for report and recommendation, i.e., whether Plaintiff has sufficiently pled his claim

for damages, and, if so, the amount to be awarded.

III.    Calculation of Plaintiff's Wage and Hour Damages

Plaintiff's overtime claims are supported by the Complaint and declaration allegations

referred to above.  Plaintiff's declaration recalls both the dates and hours worked.  It also recalls

his weekly wage.  The Court has considered the allegations set forth above and holds that those

allegations do, in fact, rise to the level of pleading required by the Second Circuit, and are

therefore sufficient for this Court to make a reasonably specific determination as to damages.

As to overtime wages, Plaintiff is entitled to 100% of all overtime wages owed.  Plaintiff states that for the period January 2015 until December 31, 2017, he worked six days per week – from Monday to Saturday.  (Compl. ¶ 12; Batzin Decl. ¶ 6.)  Plaintiff worked ten hours per day, Monday through Friday, and eight hours on Saturdays.  (Compl. ¶ 12; Batzin Decl. ¶ 6.)  These shifts resulted in Plaintiff working fifty-eight hours per week for Defendants, eighteen of which should have been compensated at one and one-half times his regular rate of pay.  (Compl. ¶ 13; Batzin Decl. ¶ 7.)  For the period January 1, 2018 until his termination on April 11, 2018, Plaintiff worked five days per week, nine hours per day – Monday to Friday.  (Compl. ¶ 14; Batzin Decl. ¶8.)  During this time, Plaintiff worked forty-five hours per week, five of which should have been compensated at one and one-half times his regular rate of pay.  (Compl. ¶ 15; Batzin Decl. ¶ 9.)  From January 2015 through March 10, 2018, Plaintiff was paid straight time for all hours worked.  (Compl. ¶ 20; Batzin Decl. ¶ 16.)  From March 11, 2016 to the end of his employment, Plaintiff was compensated for the overtime hours he worked.  (Compl. ¶ 23; Batzin Decl. ¶ 18.)  Therefore, the overtime pay due to Plaintiff is $44,212.00, as set forth below.

| Time Period | Number of Weeks | Hourly Rate of Pay | Overtime Owed per week | Overtime Wages Due |
|---|---|---|---|---|
| 01/04/2015-12/26/2015 | 51 | $28.00 | $252.00 | $12,852.00 |
| 02/27/2015-07/23/2016 | 30 | $28.00 | $252.00 | $ 7,560.00 |
| 07/24/2016-12/31/2016 | 23 | $34.00 | $306.00 | $ 7,038.00 |
| 01/01/2017-12/30/2017 | 52 | $34.00 | $306.00 | $15,912.00 |
| 12/31/2017-03/10/2018 | 10 | $34.00 | $85.00 | $850.00 |

Plaintiff is also entitled to 100% in liquidated damages on his overtime compensation claim.  As such, Plaintiff is entitled to $44,212.00 in actual damages and a like amount in liquidated damages, for a total of $88,424.00.

Under the WTPA, "[a]ny employee not provided [a wage] notice within ten business days following their first day of employment, 'may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." Rodriguez, 2018 WL 1335358, at *9 (quoting Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015)) (first alteration in original); see also N.Y. Labor. L. § 198(1-b).  Plaintiff states that he never received written notice of his pay during the course of his entire employment.  (Compl. ¶ 26; Orellana Decl. ¶ 7.)  Therefore, this Court recommends awarding Plaintiff $5,000.00 for Defendants' record keeping violations, pursuant to Section 195(1) of the NYLL.

Moreover, since April 9, 2011, the WPTA also requires employers to provide employees, with every payment of wages, a statement that lists the dates of work covered by the payment of wages, the employee's and the employer's names, the address and phone number of the employer, the employee's rate of pay, "whether paid by the hour, shift, day, week, salary, piece, commission, or other," gross wages, deductions, allowances, if any, and net wages.  N.Y. Labor L. § 195(3).  "[T]he statement shall [also] include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  Id.  Prior to February 27, 2015, "[t]he WPTA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  Id.  After February 27, 2015, the WPTA entitles a plaintiff to recover $250 for each work day that the violation occurred, not to exceed $5,000.  See N.Y. Labor L. § 198(1-d).  Here, Plaintiff states that, with the exception of approximately February to July 2016, Defendants never provided him with wage statements or paystubs during his employment.

(Compl. ¶¶ 26-27; Batzin Decl. ¶¶ 20-21.)  Accordingly, this Court recommends awarding

Plaintiff $5,000 for Defendants' violation of Section 195(3) of the NYLL.

In summary, this Court respectfully recommends that Defendants be ordered to pay

Plaintiff $44,212.00 for unpaid overtime wages for hours worked in excess of 40 hours per week,

$44,212.00 in liquidated damages, and $10,000 for Wage Theft Prevention Act violations, for a

total monetary award of $98,424.00.

IV.    Breach of Contract Damages

Plaintiff also asserts a claim for $15,000 in damages for Defendants' breach of contract

with respect to the loan Plaintiff provided to Defendants.  "A plaintiff seeking a default judgment

must normally establish his damages to a reasonable certainty with admissible evidence rather

than relying on the Complaint's unrebutted allegations about the amount of damages."  Narula v.

Jackson, No. 18-CV-0013, 2019 WL 1177856, at *3 (E.D.N.Y. Jan. 31, 2019), adopted by 2019

WL 1173184 (E.D.N.Y. Mar. 13, 2019) (citing Fed. R. Civ. P. 55(b)(2)).  If Plaintiff were

required to satisfy the foregoing, this Court would recommend his request for damages be

denied, since Plaintiff has failed to submit any evidence whatsoever of his breach of contract

damages.  He has not submitted any proof beyond the allegations set forth in the Complaint –

which, as set forth above, does not suffice for this purpose – of the alleged loan he made to

Defendants or of their failure to repay said loan.  Such proof is not necessary, however, since

Plaintiff's Complaint seeks the sum certain of $15,000 with respect to his breach of contract

damages.  (Compl. ¶¶ 76-77.)  As a result, the Court "must enter judgment for that amount and

costs[.]"  Fed. R. Civ. P. 55(b)(1).  This Court therefore respectfully recommends that the Court

award Plaintiff $15,000 in damages with respect to his breach of contract claim.

V.      Pre-Judgment Interest

      Plaintiff also seeks an award of prejudgment interest pursuant to the NYLL.  "Although it is 'well settled' that prejudgment interest is not awardable under the FLSA, . . . 'the NYLL permits the award of both liquidated damages and pre-judgment interest.'"  Khurana v. JMP USA, Inc., No. , 2017 WL 1251102, at *17 (E.D.N.Y. Apr. 5, 2017) (quoting Fermin v. Las Delicias Peruanas Rest., Inc., 993 F. Supp. 3d 19, 38 (E.D.N.Y. 2015)) (internal citation omitted).  Pursuant to the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine percent per annum."  N.Y. C.P.L.R. § 5004.  "Where, as here, unpaid wages are 'incurred at various times, interest shall be computed . . . from a single reasonable intermediate date.'"  Khurana, 2017 WL 1251102, at *17 (quoting N.Y. C.P.L.R. § 5001(b)) (additional citations omitted).  While courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest, a commonly used date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ."  Khurana, 2017 WL 1251102, at *17 (quoting Gunawan, 897 F. Supp. 2d at 93).

      In the within action, the relevant period of employment for Plaintiff's overtime claim is January 4, 2015 through March 10, 2018.  (Pl. Est. Calc. of Dam, Ex. G.)  This action was filed on April 17, 2018.  The mid-point between January 4, 2015 and April 17, 2018 is approximately August 25, 2016.  The unpaid overtime compensation due to Plaintiff under the NYLL, as set forth above, is $44,212.00.  Accordingly, at a rate of nine percent per annum, this Court recommends that, through the date of this Report and Recommendation, the amount of prejudgment interest to be awarded to Plaintiff amounts to $10,823.70.[1]

---

[1] This figure was calculated by taking the number of days between the mid-point selected, August 25, 2016, and the date of this Report and Recommendation (993 days) and multiplying it by the daily interest rate of $10.90 ($44,212.00 [unpaid overtime compensation] x 0.09 [yearly

Additionally, Plaintiff seeks an award of prejudgment interest on his breach of contract claim. Such prejudgment interest is also calculated at a rate of nine percent per annum. See N.Y. C.P.L.R. §§ 5001, 5004. As per the allegations in the Complaint and Batzin's declaration, Defendants breached the contract on December 19, 2017. Accordingly, through the date of this Report and Recommendation, the prejudgment interest due and owing on Plaintiff's breach of contract claim is $1,890.70 and this Court respectfully recommends that such an amount be awarded to Plaintiff.[2]

Based on the foregoing, this Court respectfully recommends that Plaintiff be awarded prejudgment interest in the amount of $10,823.70 for his unpaid overtime compensation claim and $1,894.40 for his breach of contract claim, for a total prejudgment interest award of $12,718.10, with additional prejudgment interest to be calculated in accordance with the formula set forth herein through the date of judgment in this action.

VI.    Post-Judgment Interest

Plaintiff also seeks an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, which applies to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; see also Khurana, 2017 WL 1251102, at *17. Accordingly, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. See 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a

---

interest] = $3,979.08 (yearly interest) / 365 days = $10.90 per day interest).

[2] This figure was calculated by taking the number of days between the date the contract was breached, December 19, 2017, and the date of this Report and Recommendation (512 days) and multiplying it by the daily interest rate of $3.70 ($15,000.00 [breach of contract damages] x 0.09 [yearly interest] = $1,350.00 (yearly interest) / 365 days = $3.70 per day interest).

rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); see also Schipani v.McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

VII.    Attorney's Fees and Costs

Both the FLSA and the NYLL provide for the recovery of reasonable attorney's fees and costs by successful plaintiffs. See 29 U.S.C. §216(b); N.Y. Labor L. §§198(1-a),(1-d). The statutes similarly allow prevailing plaintiffs to recover costs from defendants. See 29 U.S.C. §216(b); N.Y. Labor L. §663(1). Plaintiff does not include such a request in the instant motion but, instead, requests the opportunity to make such a motion at a later date. This Court respectfully recommends that Plaintiff's request be granted and that Plaintiff be directed to make any motion for attorney's fees within thirty (30) days of the date of judgment in this action.

RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that Plaintiff be awarded damages as follows: (1) unpaid overtime compensation, pursuant to both the FLSA and the NYLL, in the amount of $44,212.00; (2) liquidated damages, pursuant to the NYLL, in the amount of $44,212.00; (3) $10,000 in damages for violations of the WPTA; (4) breach of contract damages in the amount of $15,000.00; (4) prejudgment interest in the amount of $12,718.10, with additional prejudgment interest to be calculated through the date of judgment herein; and (5) post-judgment interest, to be calculated by the Clerk of the Court, pursuant to 28 U.S.C. § 1961, for a total monetary award of $126,142.10. It is further recommended that Plaintiff be afforded thirty (30) days from the date of judgment herein to submit his motion for attorney's fees and costs.

OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel.

Further, the Court is directing Plaintiff's counsel to serve a copy of this Report and

Recommendation by overnight mail and first-class mail to Defendants at their last known

address(es) and to file proof of service on ECF by May 17, 2019.  Any written objections to the

Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days

of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a),

72(b).  Any requests for an extension of time for filing objections must be directed to the district

judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections within fourteen (14) days will preclude further review of

this report and recommendation either by the District Court or Court of Appeals.  Thomas v.

Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else

waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure

to object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision.").


**SO ORDERED.**

Dated: Central Islip, New York
        May 14, 2019

                                                    /s/ Anne Y. Shields
                                                    ANNE Y. SHIELDS
                                                    United States Magistrate Judge